478 P.2d 74

**STATE of Arizona, Appellee,**

v.

**Johnny ZARATE, Appellant.**

**No. 2130.**

Supreme Court of Arizona,
In Banc.

Dec. 16, 1970.

Gary K. Nelson, Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Wood, Platt & Jenson by Dennis D. Jenson, Coolidge, for appellant.

LOCKWOOD, Chief Justice:

Defendant, Johnny Zarate was charged with possession of marijuana, and sale of marijuana, with two prior felony convictions. He was represented by counsel at all times, including the preliminary hearing. He pleaded not guilty to both charges. A few months later at a new arraignment, the county attorney moved to dismiss both priors and the charge of illegal possession, and defendant pleaded guilty to selling marijuana.

The trial court sentenced him to prison for not less than eight nor more than ten years. Two months later defendant filed a motion to set aside the judgment. The motion was denied. The present appeal raises only one question, namely whether his guilty plea was voluntary.

In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274, the United States Supreme Court held that a plea of guilty must not be accepted unless the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged, and the permissible range of sentences. Such a plea must be both intelligent and voluntary, and the record must show this to be a fact; this it does.

In the instant case the record shows that on December 29, 1969 the judge held a hearing to go into the voluntariness of the plea. The defendant testified that he was thirty-two years old and understood English; that he understood that he had certain constitutional rights, including trial by jury, the right to confront the witnesses against him, the right not to incriminate himself, and the right to testify in his own behalf; that he understood that the charge of possession, and that the two priors had been dismissed; that the statutory punishment for his crime was from five years to life, with no parole until after serving three years; that regardless of any conversations between defendant and his attorney, the actual sentence was in the court's discretion; and that no threats or promises had been made to him. The court then asked defendant to state in his own words just what he did and what he was pleading guilty to. His reply was that he had sold marijuana to narcotic agents. The court then asked defendant's attorney whether he had advised his client of his rights, and the answer was that such advice had been given, both orally, and in writing, by two letters which were admitted in evidence. The attorney stated that he thought his client was capable of understanding and waiving his rights.

The court then said to the defendant:

"Let me be very frank, Mr. Zarate. If you enter a plea of guilty before the Court, the chances are very likely that you are going to go out to the State Prison for a period of years. Now is there any question in your mind that you are not guilty of this charge or that you do not wish to waive these rights that I have been discussing with you?"

Defendant answered that he was guilty, that he wished to plead guilty, and that there was no hesitancy or doubt in his mind. The court then found that the plea was made knowingly, voluntarily, and intelligently; that defendant understood the possible consequences, and that there had been no threats or promises of immunity. The court said that despite all of the above facts, sentencing would be postponed for a week to give defendant a chance to think over his plea.

Defense counsel then asked to have a mitigation hearing, and the court asked defendant whether he understood what was going on. At this point the answer was "Some parts I do; some I don't." The court then called for an interpreter and went through the entire line of questions again. Defendant's answers were the same as before, and he again expressed his desire to plead guilty. The court again found that the plea was voluntary and was being made intelligently.

Defendant told the court: "I have always been guilty. I know I am guilty." The court again stated that he would give defendant one week to reconsider the decision.

A week later, defendant appeared to give his final decision and to testify in mitigation. At that time he told the court that he had only sold marijuana on two occasions prior to selling it to the narcotic agents when he was arrested the last time. Sentence was imposed on January 5, 1970.

On March 9, 1970 a hearing was held on defendant's motion to set aside the judgment. An interpreter was again used, and the defendant and four witnesses sought to establish that the plea of guilty should not have been accepted by the court. Defendant admitted receiving two letters from his attorney. They are in the record. The first one, dated November 4, 1969 reported to defendant that counsel had obtained an offer to dismiss one charge and the priors, in return for a plea of guilty on the charge of selling marijuana. The second letter, dated December 15, 1969, stated that the deal was a good one, that it would be followed by a mitigation hearing, and that defendant should phone if he did not desire to plead guilty.

Defendant attempted to lay the foundation for his motion to set aside the judgment, by showing that his attorney had promised him that he would get probation if he pleaded guilty. Defendant testified that his attorney told him that there was a good chance of probation; that defendant "was going to declare myself guilty because I thought they were not going to give me time out in prison"; that he thought that arrangements had been made for probation; and that he would not have pleaded guilty if he had known that he would be sent to prison. When, on cross-examination, defendant was asked why he told the court that he had sold marijuana to narcotic agents, his answer was:

"The truth of the matter is that I really don't know what I was saying or how I said it."

Defendant's fiancee testified on his behalf. She stated that his attorney had said that defendant "had a chance of getting probation." She also admitted that defendant had been arrested for the sale of marijuana prior to the time of his most recent arrest.

Defendant's attorney also testified. He described his conversations with defendant, in detail, telling how he explained that there was no defense, and that the sentence would be much greater if they went to trial than if he pleaded guilty. The attorney thought that defendant might have confused the mitigation hearing with probation, but denied ever telling defendant to

expect probation. He stated that defendant called him and agreed that the best thing to do was to accept the county attorney's offer. He also stated that he was convinced that defendant was at all times fully cognizant of what he was doing.

 The trial court went much further than was necessary, to ascertain whether the guilty plea was intelligently and voluntarily made. Under the record, there is no doubt that it was so made. Defendant's position, is that if he believed that he would get probation, he is entitled to change his plea, regardless of whether his belief was unfounded. We reject that argument. State v. Gardner, 106 Ariz. 159, 472 P.2d 28 (1970); State v. Reynolds, 106 Ariz. 47, 470 P.2d 454 (1970); State v. Jennings, 104 Ariz. 3, 448 P.2d 59 (1968). See also North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

Judgment affirmed.

STRUCKMEYER, V. C. J., and UDALL, McFARLAND and HAYS, JJ., concur.